**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:11-CR-127(8) |
| | § | |
| KEVIN HARDEN | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Kevin Harden's ("Harden") Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) (#988), wherein Harden requests that the court reduce his sentence to time served due to the threat of Coronavirus Disease 2019 ("COVID-19"). The Government filed a response in opposition (#991). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion. Having considered the motion, Probation's recommendation, the Government's response, and the applicable law, the court is of the opinion that the motion should be DENIED.

I.   Background

On January 11, 2012, a federal grand jury sitting in the Eastern District of Texas returned a First Superseding Indictment charging Harden and fifteen others with participating in a Conspiracy to Distribute and Possess with Intent to Distribute Marijuana, in violation of 21 U.S.C. § 846, from June 2006 through June 2011. On September 14, 2012, a jury returned a guilty verdict against Harden, finding that he was responsible for distributing 1,000 kilograms or more of a mixture or substance containing a detectable amount of marijuana. On February 22, 2013, Harden was sentenced to 360 months' imprisonment, followed by a 5-year term of supervised release. The judgment was affirmed on appeal on May 19, 2016. The court denied Harden's prior motion for a sentence reduction on August 13, 2018, which was affirmed on appeal

on August 26, 2019, in light of his career-offender status.  He is currently housed at the Federal

Medical Center in Lexington, Kentucky ("Lexington FMC").  Harden's projected release date is

August 25, 2037.

II.     Analysis

On December 21, 2018, the President signed the First Step Act of 2018 into law.  *See* First

Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C.

§ 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term

of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon
> motion of the defendant after the defendant has fully exhausted all administrative
> rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf
> or the lapse of 30 days from the receipt of such a request by the warden of the
> defendant's facility, whichever is earlier, may reduce the term of imprisonment
> (and may impose a term of probation or supervised release with or without
> conditions that does not exceed the unserved portion of the original term of
> imprisonment), after considering the factors set forth in section 3553(a) to the
> extent that they are applicable, if it finds that extraordinary and compelling
> reasons warrant such a reduction; or the defendant is at least 70 years of age, has served
> at least 30 years in prison, pursuant to a sentence imposed under section 3559(c),
> for the offense or offenses for which the defendant is currently imprisoned, and a
> determination has been made by the Director of the [BOP] that the defendant is not
> a danger to the safety of any other person or the community, as provided under
> section 3142(g); and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking

compassionate release.  *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb.

27, 2014) (denying petitioner's motion for compassionate release because no motion for his release

was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3

(S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant

compassionate release."). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Alam*, 960 F.3d at 833-34; *Raia*, 954 F.3d at 597.

Harden maintains that he submitted a request for compassionate release to the warden where he is housed on March 26, 2020. According to Probation, the warden received Harden's request on April 10, 2020. The warden denied Harden's request on April 29, 2020, stating that his medical conditions did not satisfy the medical components as specified in BOP Program Statement 5050.50.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C.

3

§ 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG").  In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission.  18 U.S.C § 3582(c)(1)(A).  The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).

In the instant motion, Harden, age 46, contends that his multiple heart surgeries to treat an ascending aortic dissection between 2007 and 2018 and ensuing medical conditions make him more vulnerable to complications from COVID-19.  The USSG provides that extraordinary and

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

Harden's medical records and Presentence Investigation Report ("PSR") confirm that he had an ascending aorta replacement on March 14, 2007, a pseudoaneurysm which required re-operation on March 27, 2007, and another ascending aorta repair in November 2018. Harden further contends that, during his 2018 aorta repair, he underwent cardiac arrest, some degree of a stroke, a myocardial infarction, and also developed a seizure disorder along with chronic pain. Harden asserts that "[c]urrent information related to COVID-19 as issued by the Center for Disease Control ("CDC") indicates that those with heart conditions are at a significantly increased risk of serious illness or death with the contraction of COVID-19." The Government responds by highlighting that, according to the CDC's website, aortic dissection is not a risk-increasing heart condition related to COVID-19. The Government further relies upon the medical evaluation initiated upon Harden's compassionate release request, in which Terre Adams, M.D., a medical officer, stated on April 22, 2020, that Harden was "not debilitated or terminal" and that he did not meet the medical criteria for compassionate release. The Government also points out that Harden's significant medical history was not sufficiently debilitating to prevent his participation in the offense of conviction, which was a large-scale marijuana distribution operation that spanned

5

from 2006 to 2011, including the time period he had his first aortic dissection.  Furthermore,

Probation reports that as of June 20, 2020, Health Service Administrator Anthony Bryant

evaluated Harden's medical status in the context of COVID-19, concluding:

> I see no evidence in his records that show he is at a higher risk of developing
> complications if he were to contract COVID-19.  I see no chronic respiratory
> history (asthma, COPD, or emphysemia), no diabetes, and he is not at advanced
> age as he is 45 [years old].  He has a history of cardiac arrhythmia (atrial flutter),
> which is well controlled with medication.  This condition is not a common concern
> in COVID-19 infections.   The primary concern are those with respiratory
> compromise, as COVID related pneumonia is usually the result of respiratory
> failure and the need for mechanical ventilation.

Probation also reports that Harden was examined by a physician assistant on June 12, 2020, and by

a physician on June 19, 2020, with both examinations yielding unremarkable results.

Harden further contends that because he cannot isolate and/or maintain six-foot distancing

from other inmates, he cannot provide self-care.  Harden misconstrues the meaning of self-care,

which pertains to the basic activities of daily living such as dressing, bathing, and eating.  *See* 42

U.S.C. § 1397j(14)(B).  Probation reports that Harden is ambulatory, is housed in General

Population, and has worked for 8 months in the inmate dining hall at FMC Lexington.  Harden

is being followed in the Chronic Care Clinic at the medical center, where he is currently taking

medication for anticoagulation, hypertension, epilepsy, cardiac arrhythmia, and anxiety.  The

medical records reveal that the only other medical concern Harden has voiced while incarcerated

consists of complaints of burning pain on the right side of his head radiating down his neck and

right chest area, but, according to Probation, he "claimed this pain has been occurring

intermittently 'for years' after having a repair of aortic dissection."  Hence, it appears that

Harden's medical conditions can be properly managed with medication and routine medical care.

Thus, Harden's medical summary does not meet the criteria listed in the guidelines.  Harden's

medical conditions are not terminal, nor do they substantially diminish his ability to provide self-care.

Harden's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Harden for any "other" reason. In exercising its discretion, the court also finds that no extraordinary and compelling reasons exist in relation to Harden's situation. Probation notes that on June 20, 2020, Harden tested negative for COVD-19 as part of a surveillance screening at Lexington FMC, that

he is housed in a unit that has had zero confirmed cases of COVID-19, and that the entire unit in which he resides was tested with no positive results.  In this setting in a federal medical center, where medical care is readily available, Harden appears to be in a safer environment than the general civilian populace in his desired release location of Indianapolis, Indiana, which is located in Marion County, where, as of July 27, 2020, there are 13,835 confirmed cases of COVID-19, with 759 deaths.  Therefore, although Harden expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat him, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated.  *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").  Thus, Harden has failed to establish that a qualifying medical

8

condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3353(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release).   The nature and circumstances of Harden's offense of conviction entails his playing a key role in a large-scale drug trafficking conspiracy involving 50,000 to 60,000 pounds of marijuana that lasted at least 5 years and ran from Mexico through North Texas to Indianapolis, Indiana, and Chicago, Illinois.  He operated a stash house on behalf of the $40 million drug-trafficking organization, where he was responsible for at least 11,122 kilograms of marijuana.  He had a direct connection to the source of supply in Mexico, personally delivered hundreds of pounds of marijuana to and received currency from co-conspirators on multiple occasions, and assumed control of the business when the leader learned that he was under investigation.  Harden is classified as a career offender, and his criminal history, which began at age 15, includes prior convictions for possession of a stolen vehicle, attempting to receive and conceal stolen property, robbery (2), habitual third offender for carrying a concealed weapon, and aggravated assault.  He also failed to comply with a previous term of probation.  During one of his robbery offenses, Harden fled on foot and was later apprehended with a loaded firearm, and, in the other robbery, he approached the victim, called her names and slapped her face, and then had her remove her coat and shoes, after which he proceeded to hit and kick her.  With respect to his aggravated assault conviction, Harden was observed by various witnesses stomping on the head and body of the victim, as he lay helpless on the ground.  Harden has served approximately 9 years of his 30-year sentence and has a PATTERN Risk of Recidivism

Level of High.  Probation recommended, "[c]onsidering his role in the instant offense, his history of violence, along with the length of his sentence versus the time he has served," that the court deny his motion for reduction of sentence.  Under the circumstances, the court concurs, as it cannot conclude that Harden would not pose a danger to the safety of any other person or to the community, if released from prison.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19.  In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement.  *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020).  The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff.  To date, the BOP has placed 7,086 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities."  *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020).  The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement.  18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at *3; *see United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates.  He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways."  The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease.  Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one."  No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)).  Here, Harden's track record is similarly a poor one.

In short, Harden has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  *See Koons*, 2020 WL 1940570, at *4-5 (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances").  As the court observed in *Koons*, rejecting the notion that it has

"carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Id.*

III.     Conclusion

In accordance with the foregoing analysis, Harden's Motion (#988) is DENIED.

SIGNED at Beaumont, Texas, this 26th day of July, 2020.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE