UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:11-CR-127-SDJ |
| | § | |
| KEVIN HARDEN (8) | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Kevin Harden's Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. #1028). Having considered the motion, the record, and the applicable law, Harden's motion for sentence reduction is **DENIED**.

### I. BACKGROUND

On February 25, 2013, Harden was sentenced to a 360-month term of imprisonment with five years of supervised release. (Dkt. #706). A jury found him guilty of conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846. (Dkt. #560). The jury also found that this conspiracy involved "1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana." (Dkt. #560). About eighty-eight months after sentencing, Harden filed a motion for compassionate release, citing to elevated health risks because of his medical conditions and the COVID-19 pandemic. (Dkt. #988). That motion was denied. (Dkt. #992). Three-and-a-half years later, Harden filed another motion for compassionate release—the motion currently before the Court. (Dkt. #1028). In support of his motion, Harden cites to (1) his age; (2) elevated health risks related to his medical conditions and potential exposure to COVID-19; (3) several miscellaneous

1

reasons; and (4) his rehabilitation while incarcerated. (Dkt. #1028 at 12–33). Harden requests that the Court reduce his sentence, presumably to time served, and order his release from prison. At this time, Harden has served less than half of his sentence.

## II. LEGAL STANDARDS

### A. Jurisdiction over Sentence-Reduction Motions

Under the "rule of finality," "federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed." *Freeman v. United States*, 564 U.S. 522, 526, 131 S.Ct. 2685, 180 L.Ed.2d 519 (2011) (cleaned up). That is so because a judgment of conviction imposing a sentence of imprisonment "constitutes a final judgment," which may be modified in only "limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010). Indeed, the Fifth Circuit has explained that "[a]bsent jurisdiction conferred by statute, district courts lack power to consider [post-judgment] claims." *United States v. Varner*, 948 F.3d 250, 253 (5th Cir. 2020) (quoting *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)); *see also Eberhart v. United States*, 546 U.S. 12, 17, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (per curiam) (a "basic principle of judicial process" is that "once a final [criminal] judgment is issued and the court of appeals considers a case, a district court has no power to act on it further").

The "limited circumstances" in which a defendant may invoke the district

court's[1] jurisdiction are through (1) compassionate-release motions;[2] (2) motions for sentence reduction based on a change in the sentencing guidelines;[3] (3) Rule 35(a) motions to correct clear error within fourteen days of sentencing;[4] (4) Rule 35(b) motions for sentence reduction based on substantial assistance;[5] (5) Rule 36 motions to correct clerical errors;[6] (6) habeas motions;[7] or (7) any other motion "expressly permitted by statute."[8] *Varner,* 948 F.3d at 253–54. That's it. If a Defendant seeks other relief, they must identify the statute authorizing the requested relief.

**B. Motions for Compassionate Release**

Compassionate-release motions are governed by 18 U.S.C. § 3582(c)(1)(A)(i). They can be filed by either the Director of the Bureau of Prisons ("BOP") or the defendant. Under this section, the Court may "reduce the term of imprisonment" and "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment[.]" *Id.* § 3582(c)(1)(A)(i). The standard for granting relief is exacting. The court must find

---

[1] A defendant may invoke the jurisdiction of the courts of appeals through direct appeal of their term of imprisonment under 18 U.S.C. § 3742.

[2] 18 U.S.C. § 3582(c)(1)(A).

[3] 18 U.S.C. § 3582(c)(2).

[4] 18 U.S.C. § 3582(c)(1)(B); *see also* FED. R. CRIM. P. 35(a).

[5] *Id.*; *see also* FED. R. CRIM. P. 35(b).

[6] FED. R. CRIM. P. 36.

[7] 28 U.S.C. § 2255.

[8] 18 U.S.C. § 3582(c)(1)(B).

that (1) "'extraordinary and compelling reasons' justify a sentence reduction"; (2) such a reduction "must be consistent with applicable policy statements issued by the Sentencing Commission"; and (3) "early release would be consistent with the sentencing factors in § 3553(a)." *United States v. Clark*, No. 24-10020, 2024 WL 4930383, at *1 (5th Cir. Dec. 2, 2024).

So what constitute "extraordinary and compelling reasons"? Congress chose not to elaborate further. Instead, it delegated the authority to do so to the Sentencing Commission. *See* 28 U.S.C. § 994(t) (directing the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). In so doing, Congress "provided just one restriction: 'Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021) (quoting 28 U.S.C. § 994(t)).

Under this authority, the Sentencing Commission promulgated U.S.S.G. § 1B1.13. As it stands now, there are six "extraordinary and compelling reasons" that could warrant sentence reduction: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant is a victim of abuse; (5) other reasons that are "similar in gravity" to reasons one through four; and (6) whether the defendant has an unusually long sentence. U.S.S.G. § 1B1.13(b)(1)–(6). This section binds district courts because Section 3582 requires sentence reductions to be "consistent with applicable policy statements issued by the

4

Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (finding that Congress intended the Sentencing Commission's policy statements "to be binding in § 3582(c) proceedings"). And the 2023 amendments[9] made clear that U.S.S.G. § 1B1.13 applies to motions filed by either "the Director of the [BOP] or the defendant."[10] U.S.S.G. § 1B1.13(a); *see also United States v. Jean*, 108 F.4th 275, 290 (5th Cir. 2024) (noting that "district courts are now guided by the November 1, 2023 Amendments in future cases"), *abrogated on other grounds by United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2025).

But the analysis doesn't end there. Even if the defendant shows extraordinary and compelling reasons for granting relief, several other hurdles remain. For example, the court must find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). The factors under Section 3142(g) align with the sentencing factors under 18 U.S.C. § 3553(a),[11] which must also be considered by the court:

---

[9] Amendments to the Sent'g Guidelines (U.S. Sent'g Comm'n Nov. 1, 2023).

[10] Before the 2023 amendments to the Sentencing Guidelines, U.S.S.G. § 1B1.13(a) was limited to motions "of the Director of the [BOP]." The Fifth Circuit, among others, interpreted this omission to suggest that U.S.S.G. § 1B1.13 did not apply to compassionate-release motions filed by defendants. *United States v. Shkambi*, 993 F.3d 388, 392–93 (5th Cir. 2021); *see also United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). The amended guidelines allow for motions "of the Director of the [BOP] *or the defendant*," which clarified this previous confusion.

[11] For brevity, the Court includes the language of only 18 U.S.C. § 3553(a), which is substantively identical to 18 U.S.C. § 3142(g).

5

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). The district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case[.]'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion ... where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

Based on his arguments, Harden appears to rely on his medical conditions, his age, other reasons, and his rehabilitation efforts as extraordinary and compelling reasons for his release.

### i. Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate-release request. U.S.S.G. § 1B1.13(b)(1)(A)–(D).

First, whether the Defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion,* No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F.Supp.3d 285, 292–93 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the

7

environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "'managed effectively by medication' and do not 'substantially diminish the ability of the defendant to provide self-care,'" the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release[.]" *United States v. Love*, 853 F.App'x 986, 987 (5th Cir. 2021) (quotations omitted).

Third, whether the Defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have rejected as insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g., United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public

8

health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status," must put them "at increased risk of suffering severe medical complications or death[.]" *Id.* § 1B1.13(b)(1)(D)(ii). The facility must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

Courts have consistently denied motions related to the COVID-19 pandemic under this section.[12] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (5th Cir. 2021) (denying relief to a hypertensive stroke survivor concerned by COVID-19); also citing *United States v. Rodriguez*, 27 F.4th 1097, 1098–1100 (5th Cir. 2022) (denying relief where COVID-19-fearing movant suffered from heart failure)). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]" *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also Koons,* 455 F.Supp.3d at 290) ("[A] prisoner cannot satisfy

---

[12] *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

9

his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP.").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: Both international and domestic health authorities, including the World Health Organization,[13] the United States Centers for Disease Control and Prevention,[14] and the U.S. Federal Government,[15] have made clear that the COVID-19 pandemic has ended.[16] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

---

[13] *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[14] *End of the Federal COVID-19 Public Health Emergency (PHE) Declaration*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[15] *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[16] *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination." (quotations omitted)).

### ii. Defendant's age (U.S.S.G. § 1B1.13(b)(2))

There are three requirements for the defendant's age to constitute an extraordinary and compelling reason for release. First, the defendant must be "at least 65 years old." U.S.S.G. § 1B1.13(b)(2). Second, they must be "experiencing a serious deterioration in physical or mental health because of the aging process." *Id.* Third, the defendant must have "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

### iii. Other reasons (U.S.S.G. § 1B1.13(b)(5))

The "other reasons" category is a catchall that allows the defendant to "present[] any other circumstance or combination of circumstances that" is "similar in gravity to" the four extraordinary and compelling reasons described in U.S.S.G. § 1B1.13(b)(1)–(4). *Id.* § 1B1.13(b)(5). Although some courts invoked this provision to grant COVID-19-related compassionate-release motions, this reasoning no longer applies because the pandemic is over. *See supra* notes 13–16 and accompanying text.

## C. Exhaustion Requirement Under 18 U.S.C. § 3582(c)(1)(A)

Section 3582(c)(1)(A) imposes exhaustion requirements for compassionate-release requests from a defendant: they must "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" Although this requirement is mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule." *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020), *cert. denied*, 141 S.Ct. 920 (2020).

And "mandatory but nonjurisdictional procedural filing requirements may be waived." *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022). Thus, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived. *Id.*

### III. Discussion

To begin with, the Court addresses exhaustion. Defendant Harden claims that he exhausted his administrative remedies. Attached to his motion is proof that he submitted a request for compassionate release to the warden on September 26, 2023, and that the warden rejected this request on October 12, 2023. (Dkt. #1028 at 6); (Dkt. #1028-2). The Government did not respond to Harden's motion and therefore waived any argument that Harden has not exhausted his administrative remedies. *McLean*, 2022 WL 44618, at *1. The Court thus finds that Harden has exhausted his administrative remedies.

Turning to Harden's motion, he provides three main reasons in support of his request for compassionate release: his medical circumstances (U.S.S.G. § 1B1.13(b)(1)(D)(i)), his age (U.S.S.G. § 1B1.13(b)(2)), and other reasons (U.S.S.G. § 1B1.13(b)(5)). The Court begins with Harden's medical circumstances.

Harden claims that he has several medical issues: cardiac arrhythmia, epilepsy, seizure disorder, dementia, anxiety, hypertension, GERD, and idiopathic peripheral neuropathy. (Dkt. #1028 at 12–26). Because of these conditions, along with his age, he "is at an increased risk to have severe and potentially fatal complications

if he is infected with COVID-19[.]" (Dkt. #1028 at 21). Although acknowledging that the COVID-19 pandemic has ended, (Dkt. #1028 at 21–22), Harden argues that new variants remain a risk that is unable to be mitigated by his facility. (Dkt. #1028 at 23–26).

The Fifth Circuit, however, has repeatedly denied compassionate-release motions citing similar health concerns and the COVID-19 pandemic. *See, e.g.*, *Thompson*, 984 F.3d at 432–34 (denying relief to a hypertensive stroke survivor concerned by COVID-19); *Rodriguez*, 27 F.4th at 1098–1100 (denying relief where COVID-19-fearing movant suffered from heart failure). Even if that weren't the case, and as Harden acknowledges, the COVID-19 pandemic has ended and no longer constitutes an extraordinary and compelling reason for compassionate release. *See supra* notes 13–16 and accompanying text. Harden has thus failed to prove that his medical circumstances constitute extraordinary or compelling reasons for release.

As to Harden's age, he is not "at least 65 years old," so his age does not constitute an extraordinary or compelling reason for release. U.S.S.G. § 1B1.13(b)(2).

As to Harden's other reasons, he appears to assert two. First, he claims that the prison lockdown measures—taken to prevent the spread of COVID-19—are unusually harsh. (Dkt. #1028 at 27–28). But Harden cannot, on the one hand, argue that his facility is unable to mitigate the risk of COVID-19 while, on the other hand, simultaneously complaining that the safety measures taken to reduce his risk of contracting COVID-19 are "unusually harsh." This reason is thus insufficient. Second, Harden complains about the disparity in sentences received by his co-

13

defendants. But Harden chose to go to trial instead of taking a plea deal like many of his co-defendants. Indeed, he was tried in front of, and convicted by, a jury of his peers and sentenced on the low end of his guideline range—360 months *to life imprisonment*. (Dkt. 691 at ¶ 57). The Court therefore rejects this reason too.

Finally, because Harden's medical circumstances, age, and other reasons are neither extraordinary nor compelling, his rehabilitation efforts also fall short: "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Shkambi*, 993 F.3d at. 391.

Setting the sentencing guidelines aside, the Court independently finds that the sentencing factors under 18 U.S.C. § 3553(a) support denying Harden's motion. *Rollins*, 53 F.4th at 359. The jury "found that Harden was responsible for a quantity of 1,000 kilograms or more" or marijuana. (Dkt. #560). His Presentence Report calculated a guideline range of 360 months to imprisonment for life. (Dkt. #691 ¶ 56). Harden's offense mandates a ten-year-minimum sentence, which reflects the seriousness of the crime and deters future criminal conduct. Harden asks the Court to release him even though he has served less than half of the sentence imposed by this Court. Granting Harden's request would not reflect the seriousness of his offense, promote respect for the law, or provide just punishment for his offense. Nor would it adequately deter future criminal conduct or protect the public.

The severity of his punishment is further substantiated by Judge Crone's findings in her Statement of Reasons:

> The court finds this to be a reasonable sentence in view of . . . defendant's participation in a large-scale drug trafficking conspiracy involving more

14

> than 1,000 kilograms of marijuana, his distribution of marijuana that was imported from Mexico by the drug trafficking organization in which he was a major player, his operation of a stash house on behalf of the organization, his criminal history including prior convictions for possession of a stolen vehicle, attempting to receive and conceal stolen property, robbery (2), habitual third offender for carrying a concealed weapon, and aggravated assault, and his failure to comply with a previous term of probation.

(Dkt. #707 at 4). Harden's significant role in trafficking marijuana, theft, unlawful carrying of concealed weapons, and previous aggravated assault amply demonstrate that he presents a substantial danger to the public.

In short, Because Harden has failed to show that there are extraordinary and compelling reasons to reduce his sentence, his motion must be denied. Even if Harden had made this showing, the Court would still find that his motion must be denied "after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693.

## IV. CONCLUSION

Defendants seeking compassionate release must show that (1) extraordinary and compelling reasons warrant a sentence reduction; (2) a reduction would be consistent with the applicable policy statements of the Sentencing Commission; and (3) a sentence reduction is warranted after consideration of the sentencing factors in 18 U.S.C. § 3553(a). Defendant Kevin Harden has failed to meet his burden for each requirement, and his Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A), (Dkt. #1028), is therefore **DENIED**.

**So ORDERED and SIGNED this 20th day of February, 2025.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE